BETSEY B. KNOWLTON *vs.* CITY OF AUGUSTA.

Kennebec.    Opinion August 4, 1892.

*Town. Way. Defect. Railings. Notice. R. S., c. 18, § 80.*

In an action to recover damages alleged to have been sustained through a defective highway in the city of Augusta, the plaintiff described the defect as follows : that the road-bed was narrow and unsafe, being but thirteen and one half feet wide and that, along the westerly edge, the road-bed dropped abruptly three and one half feet, and was not provided with any railing.

The evidence showed that, in order to have the road-bed level it was necessary, as the land sloped to the west, to make an excavation on the east side and an embankment on the west side. The embankment was only two and a half feet high and it had a slope of four feet in width, smooth and grassed over, the grass extending some distance into the carriage way. Besides a smooth and level road-bed, the ditch on the east side was only five or six inches deep and smooth up to the edge of a concrete sidewalk, giving an available width of more than seventeen feet over which carriages could be driven in safety. At the place of the accident three such carriages as the one in which the plaintiff was riding, could have been driven abreast. *Held;* that such a street is not unsafe or out of repair; nor was a railing necessary.

Railings are sometimes necessary; but not on the sides of such roads as this, where more accidents would be likely to happen by driving against them than by driving into the ditches.

As the plaintiff and her husband were riding at night in a covered buggy, they
came up behind a jigger standing on the east side of the street; and in
attempting to pass the jigger, the husband drove over the embankment on
the west side of the street, and the carriage was upset, and the plaintiff
thereby injured.   *Held;* that the upsetting of the carriage was caused by
careless driving; or, if not, then as the result of those dangers which all
must encounter when driving in the dark.

Where the plaintiff and her husband had notice of the condition of the street
prior to the accident, and it was admitted that the plaintiff did not give the
statutory notice (R. S., c. 18, § 80), *Held;* that the plaintiff cannot maintain
an action against the town.

ON MOTION AND EXCEPTIONS.

This was an action on the case tried to a jury in this court,
sitting in Kennebec county, in which the plaintiff recovered a
verdict of nine hundred and eighty-three dollars for injuries
which she sustained through an alleged defective highway in the
city of Augusta, in the night of October 9, 1889.

The defect is thus alleged in the declaration :   . . .   "and
that on said ninth day of October, 1889, said street was not in
repair as aforesaid, but was defective, out of repair, unsafe,
inconvenient and dangerous for travelers with their horses,
teams and carriages in the part of said Gannett street directly
opposite the house and lot of Mrs. M. A. Tobey, and on the
west side of said street at the point above mentioned, in that
the road bed from the east side to the westerly edge thereof was
very narrow, to wit, thirteen and one half feet wide, and unsafe,
and along the westerly edge of the street at the point herein
specified, the road-bed dropped abruptly to a great depth, to
wit, to the depth of three and one half feet, making a steep
and dangerous embankment which was not provided with any
railing or other means to protect travellers with their horses,
teams and carriages from going over said embankment; that
said street was not, at said point above specified, of sufficient
width for travelers with their horses, teams and carriages to
pass and repass safely and conveniently."

The case is sufficiently stated in the opinion.

*Heath and Tuell,* for plaintiff.

The insufficient width, the sharp and unnecessary shoulder,
the negligence to turnpike further to the west, saying nothing

of the want of railing, were the sole reasons why plaintiff went over the shoulder. No four-wheeled carriage going north could pass between the jigger and the ditch striking in northwesterly, and turn to the north in season to hold the front wheels in the road. The west front wheel went down the side of the ditch. The road was defective. *Flagg* v. *Hudson*, 142 Mass. 280. What is a sufficient width or method of construction is for the jury. The husband's previous knowledge of the defect would not defeat the wife's action (*Street* v. *Holyoke*, 105 Mass. 83), nor was it contributory negligence for her to permit him to drive through, using due care. The jury have found that both used due care. Notice: *Holmes* v. *Paris*, 75 Maine, 561; *Buck* v. *Biddeford*, 82 *Id.* 438; *Brooks* v. *Somerville*, 106 Mass. 274; *Lyman* v. *Amherst*, 107 Mass. 346.

*A. M. Goddard*, City Solicitor, for defendant.

Road originally constructed, thirty years ago, sufficiently wide for two carriages to safely pass, is all that can be reasonably expected of such by-way constructed and maintained chiefly for convenience of adjacent dwellings. It has ever since been maintained of same dimensions and conditions, without complaint of its insufficiency. Such facts are suggestive and worthy of consideration. Court will determine whether the road is defective. *Witham* v. *Portland*, 72 Maine, 539. Railing not necessary. *Spaulding* v. *Winslow*, 74 Maine, 528. Jigger unhitched and unattended, the proximate cause of the accident. R. S., c. 19, § 4. Notice: It must proceed from the plaintiff, "the sufferer," to the municipal officers, and to them only, and not as in the other notice, giving the alternative of highway surveyors or road commissioners.

WALTON, J. During the evening of October 9, 1889, as the plaintiff and her husband were riding in a covered buggy, they came up behind a jigger standing on the easterly side of Gannett street in Augusta; and, in attempting to pass the jigger, the husband drove over an embankment on the westerly side of the street, and the carriage was upset, and the plaintiff thereby injured. For this injury she has recovered a verdict against the

city for nine hundred and eighty-three dollars; and the case is before the law court on motion and exceptions by the city.

We have carefully examined the evidence, and we think the verdict must be regarded as clearly wrong; and for several reasons:

1. We do not think the street was defective or out of repair. It was comparatively narrow, but not so narrow as to be unsafe or unreasonably inconvenient. The land sloped to the west; and, in order to make the road-bed level, it was necessary to make an excavation on the easterly side of the street, and an embankment on the westerly side. But this embankment was only two and a half feet high, and it had a slope of four feet in width, and this slope was smooth and grassed over, the grass extending some distance into the carriage way. The road bed was smooth and level, and thirteen and a half feet wide. The ditch on the easterly side was only five or six inches deep, and was smooth up to the edge of a concrete sidewalk, giving an available width of not less than seventeen feet over which carriages could be driven in safety. At the place of the accident, three such carriages as the one in which the plaintiff was riding could have been driven abreast.

We do not think such a street can be regarded as unsafe or out of repair. Nor do we think a railing was necessary. As already stated, the embankment was not over two and a half feet above the level of the ground, and it had a slope of not less than four feet in width, and this slope was smooth and grassed over. So far as appears, no one had ever complained of the want of a railing; and we can not believe that any man of good judgment would for a moment have entertained the idea that a railing was necessary. It seems to us that there must be hundreds and, perhaps, thousands of miles of roads in this State which are turnpiked to a height of two and a half feet or more above the bottoms of the ditches at their sides, and yet have no railings to prevent people from driving into the ditches. On such roads, railings would create more danger than they would avoid. More accidents would be likely to happen by driving against the railings than by driving into the ditches.

Railings are necessary in many places; but not on the sides of a road turnpiked only two and a half feet above the bottoms of its ditches, with slopes as wide and as smooth as existed in this case.

2. We think the upsetting of the carriage in which the plaintiff was riding was caused by careless driving; or, if not, then it must be regarded as the result of those dangers which all must encounter when driving in the dark. The street was lighted by an electric lamp. But the lamp was at a considerable distance, and the plaintiff and her husband both testify that at the place of the accident was a dark shadow, so that when they came up behind the jigger they did not see it till within fifteen or twenty feet of it, and that they came up directly behind it. This condition of things required great care in order to pass the jigger in safety. And yet, so far as appears, no care at all was used. The plaintiff's husband reined his horse to the left, and drove by the hind end of the jigger, hitting the hind wheel as he passed it, and then the horse and carriage went over the embankment, and the horse was thrown down and the carriage upset. It would seem as if a moment's consideration must have warned him that such would be the result. Being so near to the jigger, and directly behind it, his course was necessarily almost directly across the street. Certainly, at a very sharp angle with it. And it would seem as if he ought to have known that, if he drove on that course far enough to pass the jigger with his carriage, his horse must go over the embankment. And he drove, as he admits, into a shadow of impenetrable darkness. He could not see where he was driving. Is not such driving heedless and careless? He knew of the existence of the embankment, and he knew that the street was comparatively narrow, for he had passed over it many times. Or, if he did not know, it must have been the result of inattention. In either case, it seems to us that the driving must be regarded as extremely careless; and especially in a top buggy, which, as every one knows, is a carriage very easily upset. If he did know the width and condition of the road, it was careless thus to drive out of it; and if he did not know, or did not remember its

width and condition, to thus drive diagonally across it, and into impenetrable darkness, was equally careless. And, upon this ground, we think the verdict is clearly wrong.

3. And it is now statutory law in this State that, one who, knowing the condition of a road, voluntarily drives over it, and receives an injury, can not recover for it against the town or city, unless he had notified one of the municipal officers of its defective condition. R. S., c. 18, § 80. And this is not the "twenty-four hours' actual notice of the defect," required to render the town or city liable. It is another and independent notice. And it is one that can not be dispensed with. It is a condition precedent to a right of recovery, and must be complied with. It has been decided that the "twenty-four hours' actual notice of the defect" exists, when one of the officers of the town or city to whom such notice may be given, has himself created the defect. *Holmes* v. *Paris*, 75 Maine, 559. *Buck* v. *Biddeford*, 82 Maine, 433. But the notice of which we are now speaking can not be thus supplied, as this court held in *Haines* v. *Lewiston*, p. 18, *ante*.

That the plaintiff and her husband had notice of the condition of Gannett street prior to the time of the accident must be regarded as proved. They had passed over it many times, and if they did not know its condition, it must have been owing to gross inattention,—a fault which the law will not allow them to profit by. That the plaintiff did not give the statutory notice is admitted. In fact, no one appears to have ever made any complaint of its narrowness, or the want of a railing. But the want of the statutory notice is fatal to a recovery. And, upon this ground, the verdict must be regarded as contrary to law. This conclusion renders it unnecessary to consider the exceptions.

*Motion sustained. New trial granted.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.